

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

March 15, 1939

Mr. C. A. Walters
County Attorney
San Saba, Texas

Dear Sir:

Opinion No. O-444
Re: Two common school districts
exempt from teacher-pupil
load requirement of Rural
Aid Law

We have received your letter of March 7, 1939, wherein you outline the following facts:

School districts Nos. 20 and 35 in San Saba County each contain more than forty-eight square miles and each is more than nine miles in length. In the year 1938 a flood destroyed a number of bridges in the county crossing the San Saba and Colorado Rivers with the result that some of the pupils were cut off from the above schools and are attending other and different schools in Lampasas County. By the calamity, the enrollment in District No. 20 was reduced in number below the normal teacher-pupil load. In your letter you do not advise the number of pupils in the respective schools nor do you advise the number of teachers employed by the School. In conversation with you we understood you to say that each of the schools has one more teacher than the limit provided in Section 4 of the Rural Aid Law. Your letter does not make it clear just what question you want answered, but we gather that your contention is that there is some kind of an exemption in the Rural Aid Law which exempts these districts from the teacher-pupil load limit as contained in Section 4. We, therefore, conclude that your question is whether such districts are so exempted from such limit.

Section 2 of said Rural Aid Law provides that State aid may be distributed in such a way as to assist all school districts of not fewer than twenty scholastics and not more than five hundred scholastics, and provides that schools in sparsely settled counties may be exempt from the minimum restrictions of twenty scholastics,

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

as hereinafter provided. Since we understand each of these districts contains more than 20 scholastics, there is no ne d to concern ourselves with what advantages a district of less than 20 scholastics in a sparsely settled county has. Said Section 2 likewise provides that the maximum limitation as to scholastic population shall not apply for any type of aid to school districts containing forty-eight square miles or more, or which is nine miles or more in length with a certain proviso thereto. We are advised that neither of these school districts has more than 500 scholastics and, therefore, the provision last above mentioned would not apply. Section 4 provides that aid may be alloted upon the basis of one teacher for any number of scholastics from 20 to 35 and one additional teacher for each additional 30 scholastics, or fractional part thereof, residing in the district. There is further provision that in making such computation, transfers into the district shall be counted and transfers out of the district shall be excluded for the current year. That section likewise provides that where unusual or extraordinary conditions cause an actual increase in enrollment, an adjustment may be made as to the number of teachers. Section 18, to which you refer, defines a sparsely settled district as being one of less than 20 enumerated scholastics and lying within a county having less than 1400 scholastics enumerated in all of the scholastics of the county. In other words, to be a sparsely settled district, there must not only be less than 1400 scholastics enumerated within all the common school districts of the county but the particular school district in question must have less than 20 scholastics. That Section provides the exemption from the minimum teacher-pupil load shall in no instance be extended to any district employing more than one teacher except that the State Superintendent may grant aid for not more than one additional teacher for any "such" common school district. The word "such" refers to districts of less than 20 scholastics in counties having less than 1400 scholastics in all their common school districts.

The Act nowhere contains any provision for exceptional relief to any district whose number of scholastics is reduced below the normal teacher-pupil load by calamity. Under the facts outlined to us, your question must be answered in the negative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By    (Signed)  Glenn R. Lewis
                         Assistant

GRL:N

APPROVED:
(Send) Gerald C. Mann,
         Attorney General of Texas